UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RIVERSTONE CENTER WEST, LLC,
a Washington Limited
Liability company, RIVERSTONE
CENTER EAST, LLC, a
Washington limited liability
company, RIVERSTONE CENTER,
LLC, a Washington limited
liability company,

               Plaintiffs,

      v.

BARNES & NOBLE BOOKSELLERS,
INC., a Deleware corporation;
and BARNES & NOBLE, INC., a
Delaware corporation,

               Defendants.

NO. CV-08-395-EFS

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT
AND TO DISMISS, GRANTING IN
PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE
PORTIONS OF THE DECLARATION OF
MICHAEL W. CRAVEN, AND
GRANTING DEFENDANTS' MOTION TO
STRIKE PORTIONS OF THE
DECLARATION OF C. SAMUEL
MARASCO

On June 17, 2010, a hearing occurred in the above-captioned matter.
Charles Michael Andersen and Elizabeth A. Tellessen appeared on behalf
of Defendants Barnes & Noble Booksellers, Inc. and Barnes & Noble, Inc.
(hereinafter collectively referred to as "Barnes & Noble"). William D.
Symmes and William M. Symmes appeared on behalf of Plaintiffs Riverstone
Center West, LLC ("Riverstone West"), Riverstone Center East, LLC
("Riverstone East"), and Riverstone Center, LLC ("Riverstone Center")

ORDER * 1

(collectively known as "Riverstone Companies"). Before the Court was Barnes & Noble's Motion for Summary Judgment and to Dismiss (Ct. Rec. 30), Barnes & Noble's Motion to Strike Portions of the Declaration of Michael W. Craven (Ct. Rec. 70), and Barnes & Noble's Motion to Strike Portions of the Declaration of C. Samuel Marasco (Ct. Rec. 73). The Riverstone Companies oppose the motions. After reviewing the submitted material and relevant authority and hearing from counsel, the Court is fully informed and grants Barnes & Noble's Motion for Summary Judgment and to Dismiss, grants in part and denies in part Barnes & Noble's Motion to Strike Portions of the Declaration of Michael W. Craven, and grants Barnes & Noble's Motion to Strike Portions of the Declaration of C. Samuel Marasco.

## I. Background[1]

The Village at Riverstone ("the Village") is a lifestyle center comprised of condominiums, retail stores, and restaurants located in Coeur d'Alene, Idaho. The Village was to be constructed in three phases: Phase I built upon property owned by Riverstone Center; Phase II built

---

[1]In ruling on this motion, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, depositions, and the parties' Joint Statement of Uncontroverted Facts (Ct. Rec. 93) in the light most favorable to the Riverstone Companies, the party opposing the Motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (per curiam). The following factual recitation was created utilizing this standard.

ORDER * 2

1   upon property owned by Riverstone East; and Phase III built upon property
2   owned by Riverstone West.

3          Barnes & Noble declared its intent to lease part of a structure to
4   be located on Phase III in a Letter of Intent dated September 7, 2006,
5   addressed to Riverstone West. (Ct. Rec. 36-8.) When the Letter of Intent
6   was sent, building had already commenced on the to-be-leased structure.
7   A lease agreement ("the Lease") was then signed by Barnes & Noble and
8   Riverstone West for a retail space and Barnes & Noble, Inc., executed a
9   Guaranty of Lease, by which it guaranteed the performance of the Lease
10  terms. (Ct. Rec. 93: Joint Statement of Facts ¶ 16.) In pertinent part,
11  the Lease provided:

12         Landlord shall deliver the premises to Tenant, and Tenant shall
           be obligated to accept delivery of the Premises ("Acceptance"),
13         when all of the following conditions have been satisfied:
               . . . .
14         (f)   The requirement of Paragraph 18.1 below relative to
                 Inducement Tenants for Tenant's acceptance of the
15               Premises have been satisfied, and Landlord has delivered
                 to Tenant Landlord's written certification of such
16               satisfaction;

17  (Lease ¶ 4.3.) Paragraph 18.1 in turn provided:

18         In the event any one of (i) Regal Cinemas, (ii) four (4) full
           service quality sit down restaurants each of at least 4,500
19         Leasable Square feet in size (one (1) of which must be located
           on "Pad 37" as depicted on Exhibit B-1 . . .), or (iii) at
20         least 50,000 Leasable Square feet of specialty retailers
           similar to those types of specialty retail tenants typically
21         found at lifestyle, and first-class outdoor and indoor mall
           shopping centers in the states of Idaho, Washington, Oregon and
22         Montana such as by way of example Talbot's, The Buckle, Harry
           & David, Sun Glass Hut, Coldwater Creek, Victoria's Secret and
23         Chico's (collectively, the "Inducement Tenants") is not either
           open and operating withing the Shopping Center (or, if not open
24         and operating, the status of construction of the
           building/leased premises in which it will conduct business
25         operations in the Shopping Center has not proceeded to a state
           of construction comparable to that of the completed Shell . .
26         . then Tenant shall have the option of delaying the

ORDER * 3

Commencement Date . . . until the foregoing condition has been satisfied.

(Emphasis added.) Also relevant to these motions is paragraph 4.5, which provides:

Notwithstanding any provision in this Lease which could be construed otherwise, in the event the conditions for delivery and acceptance of the Premises pursuant to Paragraph 4.3 above have not been satisfied by November 15, 2008 . . . Tenant may, without liability or further obligation, terminate this Lease effective immediately upon written notice thereof to Landlord, whereupon this Lease shall have no further force or effect . . . .

(Emphasis added.)

At issue is whether the required buildings and leased premises in paragraph 18.1(ii) and (iii) had "proceeded to a state of construction comparable to that of the completed Shell," and, if not, whether that failure justified Barnes & Noble's termination on November 17, 2008. The Court digresses to provide context. Barnes & Noble was informed that the original grand opening date for the Village was August 1, 2008. (Ct. Rec. 36-14.) Yet, the development experienced delays.[2] As a result, Barnes & Noble was concerned that the requirements of paragraph 18.1 would not be completed on time and advised Riverstone West that it would defer acceptance of the premises until the drop-dead date of November 15, 2008, referred to in Lease paragraph 4.5, reiterating the absolute need of paragraph 18.1's complete satisfaction. (Ct. Rec. 37-4.)

On November 13, 2008, Riverstone West sent a certificate of compliance to Barnes & Noble, indicating Riverstone West's Lease

---

[2] The reason(s) for the failure to meet the grand opening date are not material to the claim.

ORDER * 4

obligations, including paragraph 18.1, were completed, thereby requiring Barnes & Noble to accept the premises. Instead of accepting the premises, on November 17, 2008, Barnes & Noble provided Riverstone West written notice of termination alleging Riverstone West had not complied with Lease paragraph 18.1 before the deadline of November 15, 2008, because no restaurant was built on Pad 37 and there was less than 50,000 square feet of "qualifying specialty retailers" at a comparable stage of construction to the completed shell. (Ct. Rec. 52-1.)

The Riverstone Companies brought suit against Barnes & Noble claiming Riverstone West complied with the conditions for delivery and Barnes & Noble breached the Lease by not accepting the premises, thereby causing the Riverstone Companies significant financial loss. Barnes & Noble seeks summary judgment and dismissal of these claims. In response to Barnes & Noble's motion, Riverstone West relied on declarations by Michael Craven, development manager of the Village (Ct. Rec. 53), and C. Samuel Marasco, expert on retail shopping development (Ct. Rec. 55). Barnes & Noble moved to strike portions of both declarations.

## II. Standard

The Lease provides that Idaho law governs. In Idaho, a lease involving real property is interpreted under the general rules of contract interpretation which require the court to determine whether the lease terms are ambiguous. *Dante v. Golas*, 121 Idaho 149, 150-51 (Ct. App. 1992). If reasonably conflicting interpretations are provided, the court may determine the lease is ambiguous and permit extrinsic evidence to clarify the intent of the parties. *Spencer-Steed v. Spencer*, 115 Idaho 338, 345 (1988). The interpretation of an ambiguous lease is a question

of fact. *Luzar v. W. Surety Co.*, 107 Idaho 693, 697 (1984). If the lease terms are unambiguous, the interpretation is a question of law and the terms are given their plain meaning. *Harris v. State, ex. rel. Kempthorne*, 147 Idaho 401, 405 (2009). Further, an unambiguous lease containing a merger clause prohibits introduction of extrinsic evidence to modify the terms of the contract. *In re Univ. Place/Idaho Water Ctr. Project*, 146 Idaho 527, 536 (2008).

### III. Motions to Strike

Barnes & Noble moves to strike portions of both Mr. Craven's and Mr. Marasco's declarations. As explained below, the Court finds the Lease is unambiguous. Therefore, the Court excludes extrinsic evidence and confines its interpretation to the four corners of the Lease.

A.    Mr. Craven's Declaration

Barnes & Noble moves to strike paragraphs 22, 42, 46-47, 66, 68, 70-76, 83-84, 86-88, 102-03, 132, 136, 138-39, 157, 159, 162, 170-72, and 176-77. Inasmuch as paragraphs 46-47, 70-75, 83-84, 86-88, 102-03, 136, 138-39, 157, 172, and 176-77 attempt to introduce extrinsic evidence for Lease interpretation purposes, they are stricken.

The phrase in paragraph 68 "reported to Barnes & Noble" and the contested portion of paragraph 22 are also stricken because the declarant lacks personal knowledge. *See Norita V. N. Mariana Islands*, 331 F.3d 690, 697-98 (9th Cir. 2003).

Paragraph 76 contains Mr. Craven's perspective as to why the Riverstone Companies were divided. Whether or not his perspective is correct, it provides an explanation as to why the Riverstone Companies behaved the way they did. Therefore, paragraph 76 is not stricken.

ORDER * 6

1   Paragraph 132 describes the potential affect Barnes & Noble's
2   alleged interference with the Village's other potential tenants would
3   have on the Village. Mr. Steebins confirmed the allegations, at least in
4   part, in his deposition. Mr. Craven's prediction as to the effects of the
5   allegations is important for the Court to consider. Therefore, paragraph
6   132 is not stricken.

7   Paragraph 159 is challenged as a statement made during settlement
8   negotiations, inadmissible under Federal Rules of Evidence 408. Barnes
9   & Noble was unable to prove that the statement was made in the course of
10  settlement discussions. Therefore, paragraph 159 is not stricken.

11  Barnes & Noble also moves to strike paragraphs 66, 162, and 170-71
12  but failed to explain the reason(s) in its memorandum. Therefore,
13  paragraphs 66, 162, and 170-71 are not stricken.

14  In summary, Barnes & Noble's motion to strike Mr. Craven's
15  declaration is granted in part and denied in part.

16  B.   <u>Mr. Marasco's Declaration</u>

17  Barnes & Noble also moves to strike portions of Mr. Marasco's
18  declaration. Mr. Marasco is being proffered as an expert in hopes to
19  clarify the terms of the Lease. Inasmuch as the Court has found the Lease
20  to be unambiguous, Mr. Marasco's interpretation is unnecessary and the
21  challenged paragraphs are stricken. Barnes & Noble's motion is granted.

22                    **III. Summary Judgment Motion**

23  Barnes & Noble moves for summary judgment on Riverstone West's
24  first, second, and fourth causes of action. Barnes & Noble claims
25  Riverstone West failed to comply with the requirements in Lease paragraph
26

ORDER * 7

18.1, which triggered Barnes & Noble's right to terminate the contract under paragraph 4.5.

The Lease required, at the time Barnes & Noble's "shell" was delivered and no later than November 15, 2008, a restaurant on Pad 37 (Lease ¶ 18.1(ii)) and "50,000 Leaseable Square feet of specialty retailers" (Lease ¶ 18.1(iii)) either open and operating, or in "a state of construction comparable to that of the completed [Barnes & Noble] Shell."[3] The Court finds that Riverstone West did not comply with the requirement regarding Pad 37 in paragraph 18.1(ii). Because this finding, alone, permits Barnes & Noble to terminate the Lease, the Court does not determine whether Riverstone West complied with paragraph 18.1(iii).

A.    Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some

---

[3]The Lease had more requirements. However, the omitted requirements are not in dispute here.

ORDER * 8

metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion). "The interpretation and legal effect of an unambiguous contract are questions of law to be resolved by the court rather than the jury." *Luzar*, 107 Idaho at 697.

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

B.    Pad 37

Barnes & Noble argues that Pad 37 had not "proceeded to a state of construction comparable to that of the completed Shell" because as of November 15, 2008, Pad 37 consisted of a vacant lot, which merely included utilities, street lighting, and sidewalks.[4] (Plaintiff's

---

[4] All these had been on site since spring 2008. Riverstone West also acknowledges that the building permit to begin construction on the restaurant was not issued until November 14, 2008-one day before it was

ORDER * 9

Statement of Material Facts, ¶¶ 136-37.) Riverstone West responds that, because Pad 37 was an inducement restaurant, not an "Inducement Tenant," Pad 37 was not subject to paragraph 4.5's right of termination. Alternatively, Riverstone West contends that "proceeded to a state of construction comparable to that of the completed Shell" is ambiguous, that it should be interpreted based on the scheduled grand opening date due to the dramatic differences of each building structure, and that, when viewed in the light of the April 1, 2009 grand opening date, Pad 37 was on schedule to open.

   *1.    Paragraph 4.5: Right of Termination*

   Riverstone West argues that Pad 37 should not be subject to paragraph 4.5's right of termination because Pad 37 was to house an inducement restaurant as opposed to an "Inducement Tenant" that would trigger the termination right.[5] Riverstone West argues that the "specialty retailers" in paragraph 18.1(iii) are the "Inducement Tenants," while the restaurants in 18.1(ii), including Pad 37, are inducement restaurants. The Court finds this argument lacks merit for two reasons.

   First, such an interpretation requires "Inducement Tenants" to replace "specialty retailers," which is a specific term utilized in the same paragraph. Such a substitution is inappropriate. The parties clearly intended the collective "Inducement Tenants" to include the three prior

_____

supposed to be comparable to the completed shell.

   [5] Paragraph 4.5 permits termination if the requirements of Paragraph 4.3 are not completed. Paragraph 4.3(f) requires the completion of Paragraph 18.1 "relative to Inducement Tenants."

ORDER * 10

1  sections: the Regal Cinemas movie theater, the restaurants, and the
2  specialty retailers.

3      Second, Riverstone West considered the restaurants in paragraph
4  18.1(ii) as "Inducement Tenants" during the development of the Village.
5  In Riverstone West's "Landlord's Certificate of Inducement Tenants," no
6  distinction is made between "Inducement Tenants" and inducement
7  restaurants. (Ct. Rec. 38-2.) In fact, the attached Exhibit to the
8  Certificate is entitled "Exhibit A: Inducement Tenants" and lists the
9  tenants on the left hand side including all tenants under paragraph
10 18.1(i), (ii), and (iii). It is clear that "Inducement Tenants" in
11 paragraph 18.1 refers to all the tenants in that paragraph, not just
12 subsection (iii)'s "specialty retail" tenants.

13     The meaning of "Inducement Tenants" is unambiguous. Barnes & Noble
14 could exercise the termination right if Pad 37 had "not proceeded to a
15 state of construction comparable to that of the completed Shell."

16     *2.   Paragraph 18.1: Comparable State of Construction*

17     After reviewing the entire Lease and understanding its purpose, the
18 Court finds "the status of construction of the building. . . has not
19 proceeded to a state of construction comparable to that of the completed
20 Shell . . ." is unambiguous. The parties clearly intended this phrase to
21 refer to the progress of the physical appearance of the structure to be
22 built on Pad 37. The Court acknowledges that reasonable minds may differ
23 as to what the actual structure on Pad 37 was required to include in
24 order to be physically similar to the completed shell. However, it is
25 unnecessary to speculate because the vacant lot, on the drop-dead date
26 of November 15, 2008, is clearly not physically comparable to a completed

1  shell. Accordingly, Riverstone West failed to satisfy that Lease
2  requirement and summary judgment is appropriate for Barnes & Noble.

3      Riverstone West attempts to avoid the deadline of November 15, 2008,
4  by arguing that the grand opening date was the intended comparison gauge.
5  However, in Lease paragraph 4.10, the parties agreed to certain terms
6  with reference to a "Projected Grand Opening Date."[6] This reference
7  evidences that the grand opening was contemplated by the parties and
8  inserted in certain parts of the Lease. Paragraph 18.1 makes no mention
9  of a grand opening. The fact that such a phrase was contemplated in other
10 areas of the Lease but missing from paragraph 18.1 shows that it was not
11 the parties' intent to gauge the progress of the "Inducement Tenants" by
12 the expected grand opening date. The Court finds Riverstone West's
13 proposal, requiring substitution of one Lease term for a dissimilar Lease
14 term, unpersuasive.

15     In sum, the Court finds that summary judgment is appropriate for
16 Barnes & Noble: the "status of construction" of Pad 37 had "not proceeded
17 to a state of construction comparable to that of [Barnes & Noble's]
18 completed Shell," thereby allowing Barnes & Noble to exercise its right
19 of termination.

20 C.  <u>Duty of Good Faith</u>

21     Riverstone West also contends that the Court should deny Barnes &
22 Noble's summary judgment motion because Barnes & Noble breached its duty
23 of good faith and dealing by terminating the Lease, which "significantly
24 impaired the Riverstone Companies' Lease benefits." (Plaintiff Response,

25 ───────────────────

26     [6] The original grand opening date was August 1, 2008. It was later
changed to April 1, 2009.

ORDER * 12

Ct. Rec. 48, at 23.) Riverstone West alleges Barnes & Noble terminated because of financial concerns in a troubling economy, not because Riverstone West failed to satisfy paragraph 18.1. *Id*. at 23-24.

"Good faith and fair dealing are implied obligations of every contract." *Taylor v. Browning*, 129 Idaho 483, 490 (1996). "The implied covenant of good faith and fair dealing arises only regarding terms agreed to by the parties." *Id*. at 491. "The covenant of good faith and fair dealing cannot override an express provision in the contract." *Independence Lead Mines Co. v. Hecla Mining Co.*, 143 Idaho 22, 26 (2006).

The Court finds Riverstone West's breach of duty of good faith argument unpersuasive. Barnes & Noble negotiated a termination right. Riverstone West did not comply with the requirements of paragraph 18.1, thereby allowing Barnes & Noble to exercise the bargained-for termination right. Because Barnes & Noble exercised its express right in the Lease, its motive is immaterial and it did not breach its duty of good faith and fair dealing. *See Independence Lead Mines Co.*, 143 Idaho at 26 (holding that an express contractual right cannot be overridden by the duty of good faith and fair dealing); *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 589 (7th Cir. 2000 (holding that motive is immaterial when a party wishes to exercise an explicit right contained in a contract).

D.  Forfeiture

Lastly, Riverstone West argues that permitting Barnes & Noble to terminate the Lease would result in disproportionate forfeiture because Riverstone West's failure to fully comply with paragraph 18.1 by November 15, 2008, is an immaterial breach.

ORDER * 13

The Court is sympathetic to the fact that Riverstone West has undisputedly expended many resources in an attempt to ready Barnes & Noble's shell. Yet, the case law does not support the argument that an express termination right may be disregarded in order to avoid forfeiture. In fact, a case cited by Riverstone West in support of avoiding forfeiture states, "Although forfeitures are not favored in the law, contracts expressly providing for forfeitures generally will be upheld. Any forfeiture must strictly follow the terms of the contract." *McGill Hardy v. McGill*, 137 Idaho 280, 287 (2002)(citation omitted). The parties contemplated potential failures and bargained for their own remedies. Riverstone West negotiated the Lease, so it knew its obligations and the consequences for failing to perform. The negotiated terms of the Lease take precedence and this Court will not change those terms.

### IV. Motion to Dismiss

Barnes & Noble moves to dismiss the causes of action involving third party beneficiaries, restitution, and tortious interference.

A.  <u>Third Party Beneficiary Claims</u>

Barnes & Noble moves to dismiss the third and fifth causes of action for failure to meet the pleading requirements of Federal Rules of Civil Procedure 8. Alternatively, Barnes & Noble seeks summary judgment on these causes of action based upon the assertion that the Lease does not confer any third party beneficiary rights. These claims are third party beneficiary claims on behalf of Riverstone East and Riverstone Center.

By granting Barnes & Noble summary judgment for the first (specific performance) and second (damages for breach of the Lease) causes of

1  action, any third party beneficiary claims relating to those underlying

2  breach of contract claims are dismissed as moot.

3  B.  Restitution

4      Barnes & Noble seeks dismissal of Riverstone West's sixth cause of

5  action for restitution because 1) it fails to satisfy Federal Rule of

6  Civil Procedure 8 and 2) Barnes & Noble did not breach the Lease so no

7  legal basis exists for restitution.

8      Federal Rules of Civil Procedure 8(a)(2) "requires only a short and

9  plain statement of the claim showing that the pleader is entitled to

10 relief, in order to give the defendant fair notice of what the claim is

11 and the grounds upon which it rests." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

12 1949 (2009). A motion to dismiss can only be granted under Rule 8 where,

13 after accepting all allegations in the complaint as true, the allegations

14 of the complaint do not make out a plausible claim. *Id*. at 1949-50.

15     Restatement of Contracts § 370 states "[a] party is entitled to

16 restitution under the rules stated in this Restatement only to the extent

17 that he has conferred a benefit on the other party by way of part

18 performance or reliance." It is unclear what benefit was conferred upon

19 Barnes & Noble by Riverstone for which restituion is sought. The only

20 alleged benefit was the construction done to the Barnes & Noble shell.

21 Barnes & Noble never accepted the shell. Restatement of Contracts § 370

22 comment (a) explains that while restitution may be sought by a party who

23 makes improvements on a property in reliance of a contract, "a party's

24 expenditures in preparation for performance that do not confer a benefit

25 on the other party do not give rise to a restitution interest." Without

26 an alleged benefit conferred upon Barnes & Noble, Riverstone West's

ORDER * 15

complaint does not give Barnes & Noble a "fair notice," required by Rule 8, of what is being claimed for restitution. This cause of action is therefore dismissed.

C.    <u>Tortious Interference</u>

Barnes & Noble seeks dismissal of Riverstone West's seventh cause of action (tortious interference) based on a failure to satisfy Federal Rules of Civil Procedure 8 as explained by *Iqbal* and a failure to satisfy Federal Rules of Civil Procedure 12(b)(6) because the economic loss rule prohibits this cause of action.[7]

In examining whether this claim satisfies Rule 8, the Court begins by examining the necessary elements to support tortious interference. In Idaho, "the general rule is that a party cannot tortiously interfere with its own contract." *Ostrander v. Farm Bureau Mut. Ins. Co.*, 123 Idaho 650, 654 (1993). Tortious interference requires proof of four elements: "(a) the existence of a contract [to which the defendant is not a party], (b) knowledge of the contract on the part of the defendant, (c) intentional interference causing a breach of the contract, and (d) injury to the plaintiff resulting from the breach." *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 893 (1974). Assuming these elements would constitute the legal conclusions which the facts alleged in the complaint must support, the Court turns to the complaint to look for the supporting facts.

---

[7] Of note, the economic loss rule has been called different names: economic harm rule, economic loss rule, and economic loss doctrine. This Court has not noted any significant differences in the general principles underlying the rule.

ORDER * 16

1   Although the factual allegations are vague, Riverstone West
2   sufficiently pled facts that support the legal conclusions required to
3   initiate a claim of tortious interference.[8]

4   However, Idaho's economic loss rule prohibits Riverstone West's
5   tortious interference cause of action. The economic loss rule precludes
6   recovery of tort damages, where the plaintiff's rights arise solely from
7   contract, including a "failure to perform a promise contained in the
8   contract." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872-77
9   (9th Cir. 2007) (interpreting Nevada law but including a general overview
10  and history of the economic loss doctrine).

11  The driving force behind Barnes & Noble's alleged tortious
12  interference is breach of contract. Regardless of whether Barnes & Noble
13  breached the Lease (which, as described above, it did not), the law
14  prohibits this type of action. Riverstone West fails to state a plausible
15  claim for relief as required by Federal Rules of Procedure 12(b)(6). The
16  tortious interference claim is dismissed.

17                          **V. Attorneys' Fees**

18  Barnes & Noble seeks compensation for attorneys' fees for defending
19  the claims brought against it under the Lease. Lease paragraph 37.9
20  provides that the prevailing party in a suit to enforce rights under the
21  Lease "shall be entitled to recover . . . all court costs and reasonable

22  _____

23      [8]For example, the complaint does not explain how it was damaged but
24  it can be inferred by reading the complaint that, because of Barnes &
25  Noble's alleged wrongful interference by terminating the Lease, other
26  entities with whom the Riverstone Companies had leases were contractually
permitted to terminate those leases.

ORDER * 17

attorneys' fees." Riverstone West did not oppose this part of the motion. Barnes & Noble is the prevailing party in these proceedings and is permitted to submit documentation supporting its claim for reasonable attorneys' fees and court costs within fourteen (14) days of the date of this Order. Once submitted, Riverstone West will have fourteen (14) days to respond. Unless the Court requests it, Barnes & Noble shall not reply.

## VI. Conclusion

As stated above, **IT IS HEREBY ORDERED**:

1) Defendants' Motion to Strike Portions of the Declaration of Michael W. Craven (**Ct. Rec. 70**) is **GRANTED IN PART** and **DENIED IN PART**;

2) Defendants' Motion to Strike Portions of the Declaration of C. Samuel Marasco (**Ct. Rec. 73**) is **GRANTED**;

3) Defendants' Motions for Summary Judgment (first, second, and fourth causes of action) and to Dismiss (third, fifth, sixth, and seventh causes of action) **(Ct. Rec. 30**) are **GRANTED.**

4) Barnes & Noble's request for attorneys' fees is **GRANTED**; no later than August 6, 2010, Barnes & Noble shall submit documents in support of its reasonable attorneys' fees and costs request.

5) Judgment is entered in Barnes & Noble's favor.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this___16th___ day of July 2010.

_____
S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2008\08-cv-395.SJ.wpd

ORDER * 18